**BLOCK & LEVITON LLP**
Whitney E. Street (CA Bar No. 223870)
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 968-1852
Fax: (617) 507-6020
whitney@blockleviton.com

**LOWEY DANNENBERG, P.C.**
Andrea Farah
Christian Levis
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone:  914-997-0500
Fax: (914) 997-0035
Email: afarah@lowey.com
            clevis@lowey.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PAUL HESSONG, on Behalf of Himself and All Others Similarly Situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | <u>**CLASS ACTION**</u> |
| PINTEREST, INC. and BEN SILBERMANN and TODD MORGENFELD | **JURY TRIAL DEMANDED** |
| Defendants. | |

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Paul Hessong ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his undersigned counsel, hereby brings this Class Action Complaint for Violation of Federal Securities Law ("Complaint") against (i) Pinterest, Inc. ("Company" or "Pinterest"); (ii) Ben Silbermann, the Company's co-founder, President and Chief Executive Officer ("CEO"); (iii) Todd Morgenfeld, the Company's Chief Financial Officer and Head of Business Operations ("CFO") (Defendants Silbermann and Morgenfeld are collectively referred to as "Individual Defendants", and together with the Company as "Defendants") based upon, *inter alia*, the investigation conducted by and under the supervision of Plaintiff's counsel, which included a review of the Company's public documents, conference calls, and announcements, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding the Company, analysts' reports and advisories about the Company and readily obtainable information.  Plaintiff's counsel's investigation into the matters alleged herein is ongoing and many relevant facts are known only to, or are exclusively within the custody or control of, the Company and the Individual Defendants. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## **NATURE OF THE ACTION**

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired common shares of Pinterest stock between May 16, 2019 and November 1, 2019, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violation of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Pinterest is a Delaware corporation headquartered in San Francisco, California.  The Company is an image sharing and social media service comprised of small images or "pins" for finding ideas like recipes, home décor and style inspiration.  The Company offers online marketing services to commercial brands, which allow them to connect with people on the basis of their shared tastes, aesthetic preferences and interests.  Pinterest monetizes its platform through online

advertising.  The Company utilizes user data to show targeted advertisements to its users based on their interests and searches. As far as advertising revenue is concerned, the Company readily admits that its financial and operational well-being critically depends on its ability to grow its base of monthly active users.

3.  Throughout the Class Period, Defendants repeatedly assured the market that Pinterest was successfully expanding its domestic user base and that there existed a significant addressable market of U.S. users that served as a catalyst for its online advertising revenue.  Unbeknownst to investors, however, the domestic market was quickly becoming saturated, leaving little room for future expansion or growth.  This negative trend, which would ultimately impact Pinterest's current and future financial results, was known to Defendants throughout the Class Period, yet undisclosed to the investing public.

4.  Therefore, throughout the Class Period, Defendants made materially false and misleading statements, and failed to disclose material adverse facts about the Company's business, operations, and financial health.  Specifically, Defendants made false and/or misleading statements and failed to disclose to investors that: (i) the Company's addressable market in the U.S. was reaching its maximum capacity; (ii) which significantly decelerated Pinterest's future ability to monetize on U.S. average revenue per user; (iii) Pinterest was at an increased risk of losing advertising revenue; (iv) and as a result, Defendants' public statements were materially false and misleading at all relevant times or lacked a reasonable basis and omitted material facts.

5.  On October 31, 2019, Pinterest announced disappointing preliminary financial results for the third quarter 2019, having missed revenue estimates.  Additionally, Pinterest reported net revenue $279.7 versus the consensus projection of $282 million, indicating strong deceleration in the growth of its domestic user base.  The Company also gave full year 2019 guidance, which it only marginally increased, indicating further deceleration in future quarters.

6.  On this news, the price of Pinterest common shares sharply declined by 17%, to close at $20.86, on November 1, 2019, on unusually high trading volume.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

3

7.      As a result of Pinterest's wrongful acts and misrepresentations, and the precipitous decline in the market value of its common shares, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under Section 10(b) and 20(a) of the Exchange Act (15 U.S.C. § 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

10.     Venue is proper in this judicial district pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b). Pinterest's common stock trades on the New York Stock Exchange ("NYSE").  Accordingly, there are presumably hundreds, if not thousands, of investors in Pinterest's common stock located within the U.S., some of whom undoubtedly reside in this judicial district.

11.     In connection with the acts alleged in this Complaint, Pinterest, directly or indirectly, used the instrumentalities of interstate commerce, including interstate wires, U.S. Postal Service mail, wireless spectrum, and the national securities exchange.

## INTRADISTRICT ASSIGNMENT

12.     Pursuant to Local Rule 3-2(c), this is a securities fraud class action to be assigned on a district-wide basis.  Defendant Pinterest, Inc. is headquartered in San Francisco, CA, which is within the San Francisco/Oakland Division.

## PARTIES

13.     Plaintiff is a resident of Smithsburg, Maryland.  As set forth in the attached Certification, incorporated by reference herein, Plaintiff acquired Pinterest's shares during the Class Period and was damaged by the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

14.     Defendant Pinterest is a Delaware company with a principal place of business at 505 Brannan Street, San Francisco, California, United States.  Pinterest shares trade on the NYSE under the ticker symbol "PINS."  Defendant Pinterest is a visual discovery platform where users create, share and discover image-based content for inspiration for their lives.

15.     Defendant Ben Silbermann ("Defendant Silbermann"), is the co-founder of the Company and has served as the Company's CEO since the launch of the Company in January 2010.

16.     Defendant Todd Morgenfeld ("Defendant Morgenfeld"), has served as the Company's CFO since October 2016.

17.     The Individual Defendants possessed the authority to control the contents of statements made by Pinterest in the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.,* the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Due to their position with the Company at various points, and their access to Pinterest's material information that was unavailable to the public, the Individual Defendants knew that the adverse facts described herein were not disclosed to and were being concealed from investors. Defendants are therefore liable for the false statements and omissions alleged herein.

## SUBSTANTIVE ALLEGATIONS

### Background

18.     Launched in 2010, Pinterest is a visual search engine, where users create, share and seek inspiration from content in various categories such as home décor, recipes, and fashion. On both its website and app, Pinterest consists of images called "pins" that have been linked to or from a website or uploaded by a user. These pins are then grouped in themes called "boards" to create different virtual albums. The Company caters to many business enterprises that utilize Pinterest to promote their businesses and websites and to attract buyers. The Company filed its Initial Public Offering on March 22, 2019 and started trading publicly on April 18, 2019.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

5

19.     At the time of its Initial Public Offering, Pinterest had more than 250 million monthly active users, two thirds of whom are females.  Of Pinterest's female users, the majority are moms, who according to marketing studies, are often the primary decision makers when it comes to buying products and services for their households.  As such, Pinterest's audience is highly valuable to online advertisers.

20.     Pinterest's primary source of revenue is advertising revenue.  Pinterest sells targeted ads, called "promoted pins," that appear at the top of users' feeds and search results.  Promoted Pins are effectively advertisements, paid for by a variety of commercial entities. Pinterest utilizes user data to target advertisements based on user interests and searches, as well as other demographics. Since Pinterest's revenue is driven by interest and use of its platform, Pinterest's ability to generate revenue is critically dependent on the size and demographics of its active user base and its ability to attract and grow its user audience.

21.     Pinterest measures the monetization of its platform through Average Revenue per User ("ARPU"), which is the total revenue in a given geography during a period divided by the average of the number of monthly active users ("MAUs") in that geography.  ARPU generated by international users is significantly lower than revenue generated by U.S. users.  For example, during the year ended December 31, 2018, U.S. ARPU was $9.04 per user while international ARPU was miniscule by comparison, at just $0.25 per user.  The difference between international and domestic ARPU is largely driven by the relative size and maturity of the U.S. digital advertising market.  As a result, Pinterest's ability to grow its domestic active user base is of great importance to its overall ability to generate revenue and is a critically important metric for the market.

22.     Immediately after going public, the Company embarked on an aggressive campaign to convince investors of its future growth and monetization opportunities.  During the months following its March 2019 IPO, the Individual Defendants, time and again, misrepresented to the investing public the market opportunities that purportedly existed that would allow Pinterest to grow and scale its business on the domestic market.   For example, Pinterest assured investors of "comfortable room" for growth of its MAUs in both, international and domestic markets, as well as the "strong trends in U.S. [ARPU]."  What Pinterest knew – but failed to relay to the investing public

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

— was that the domestic market was quickly becoming fully saturated and was approaching its maximum capacity, rendering Pinterest's path to future growth less than certain.   These false assurances and omissions gave the investing public no reason to suspect that Pinterest's business was about to max out its domestic active user potential, and thereby significantly decelerate its revenue growth.

23.     Throughout the Class Period, Defendants made materially false and misleading statements, and failed to disclose material adverse facts about the Company's business, operations, and financial health.  Specifically, Defendants made false and/or misleading statements and failed to disclose to investors that: (i) the Company's addressable market in the U.S. was reaching its maximum capacity; (ii) which significantly decelerated Pinterest's future ability to monetize on U.S. ARPU; (iii) Pinterest was at an increased risk of losing advertising revenue; (iv) and as a result, Defendants' public statements were materially false and misleading at all relevant times or lacked a reasonable basis and omitted material facts.

## Materially False And Misleading Statements

24.     The Class Period begins on May 16, 2019.  On that day, Pinterest issued a press release announcing its financial results for the first quarter of 2019.   In the press release, Defendant Morgenfeld touted the Company's revenue growth, particularly highlighting revenue generated from domestic users: "We were particularly encouraged by the strength we saw in U.S. revenue and international user growth."

25.     In the Company's quarterly report filed on May 17, 2019 on SEC Form 10-Q ("Q1 2019 Report"), the Company reported reaching 291 million MAUs, representing a 22% year-over-year growth.  As to the revenue generated from MAUs, the Company highlighted the U.S. revenue growth, a critical metric of Pinterest's financial and operational well-being, stating as follows:

> Revenue based on the geographic location of our users increased by 51% in the United States to $187.0 million and by 107% internationally to $14.9 million. ***U.S. revenue growth was driven by a 7% increase in average U.S. MAUs*** and a 41% increase in U.S. ARPU. International revenue growth was driven by a 30% increase in average international MAUs and a 59% increase in international ARPU. ***ARPU growth in the U.S. and internationally was driven by higher monetization of both of those user bases largely due to an***

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

*increase in the number of advertisements delivered as a result of an increase in the overall number of advertisers on our platform and increased demand from existing advertisers.*

26.     The Company's Q1 2019 Report further informed that the Company's "revenue in the United States is higher primarily due to our decision to focus our earliest monetization efforts there and also due to the relative size and maturity of the U.S. digital advertising market."  Appended as exhibits to the Q1 2019 Report were signed certifications pursuant to the Sarbanes-Oxley Act of 2002, wherein the Individual Defendants certified that "[t]he [Q1 2019 Report] fully complies with the requirements of section 13(a) or 15(d) of the Securities Exchange Act of 1934," and that "[t]he information contained in the [Q1 2019 Report] fairly presents, in all material respects, the financial condition and results of operations of the Company."

27.     In a letter to shareholders dated May 16, 2019, the Company provided shareholders with an unrealistic outlook on its future U.S. revenue, assuring investors of the continued growth in both the U.S. and international markets:

> *We expect to maintain strong momentum in our business as we achieve larger scale. We expect revenue to grow 40%-43% compared to full-year 2018, driven by improving ARPU, particularly in the U.S.  We expect to grow users in both the U.S. and International.*"

28.     During the Q1 2019 Earnings Call held on the same day to discuss the Company's financial results and operations, Defendant Morgenfeld similarly assured investors that the U.S. market would continue to grow, stating: "*[We] see comfortable room* in all of our markets, in particular in international markets *but also in the US*, to continue to drive advertising content higher." When asked about the number of advertisers Pinterest had during the first quarter of 2019, Defendant Morgenfeld supported his prior statement and confirmed that the number of advertisers was growing and that the trend was expected to continue.

29.     On August 1, 2019, the Company issued a press release, announcing its financial results for the second quarter of 2019.  In the press release, Defendant Silbermann highlighted the Company's growth and diversification of its advertiser base.  Defendant Morgenfeld echoed Defendant Silbermann's unrealistic enthusiasm, stating that "[t]he momentum we have seen over the past several quarters continued as more advertisers recognize the power of our platform to reach

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

consumers." As to the U.S. revenue, Defendant Morgenfeld stated the Company "***remain[s] encouraged by trends in U.S. ARPU and by user growth in international markets.***"

30. In a letter to shareholders dated August 1, 2019, the Company further touted its growing MAU, and once again, highlighted the "strong trends in U.S. average revenue per user (ARPU) and user growth in international markets." Additionally, the Company highlighted the accelerated U.S. revenue, stating that the U.S. ARPU increased "41% year-over-year." As to guidance for 2019, the Company provided unrealistic expectations, stating as follows:

> We expect revenue to grow 45-48% in 2019 compared to full-year 2018, driven by improving ARPU, ***particularly in the U.S. We expect to grow users in both the U.S.*** and international. Consistent with trends in recent years, we expect to grow International users at a faster pace relative to the U.S.

31. That same day, on the Q2 2019 Earnings Call, the Individual Defendants discussed the Company's financial results and operations. During the call, the Individual Defendants continued to exaggerate the forecast for Pinterest shares and their expectation of Pinterest's continued growth. More specifically, during the Q2 2019 Earnings Call, Defendant Silbermann touted Pinterest's 62% growth year-over-year and Pinterest's attainment of "more than 300 million people now using Pinterest every month." As to Pinterest's growing advertiser base, Defendant Morgenfeld echoed these rosy predictions:

> [W]e continue to accelerate the growth in the number of advertisers on the platform. We talked last quarter about having done that and we accelerated yet again in the number of advertisers this quarter as well.
>
> \*       \*       \*
>
> Longer term, we would expect price to continue to improve because advertisers tell us that they're getting a great return from their investment on Pinterest. So today the exercise is trying to get as many advertisers on the platform. So that they all see the value and help us build a lot more robust auction.

32. In the quarterly report for the second quarter 2019 filed on August 2, 2019 on SEC Form 10-Q ("Q2 2019 Report"), the Company reiterated reaching U.S. ARPU of $2.80, which

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

represented growth of 41%, compared to the three months ended June 30, 2018.  As to the revenue generated from domestic and international users, the Company stated:

> For the three and six months ended June 30, 2019, **U.S. revenue growth was driven by 41% and 39% respective increases in U.S. ARPU supported by a 13% increase in U.S. MAUs,** and international revenue growth was driven by 123% and 89% respective increases in international ARPU supported by a 38% increase in international MAUs. **ARPU growth in the U.S. and internationally was driven by higher monetization of both of those user bases largely due to an increase in advertising demand from new and existing advertisers on our platform.** This resulted in an increase in the number of advertisements served as well as an increase in the price of advertisements, but the impact of the latter was not significant.

33.     Appended as exhibits to the Q2 2019 Report were signed certifications pursuant to the Sarbanes-Oxley Act of 2002, wherein the Individual Defendants certified that "[t]he [Q2 2019 Report] fully complies with the requirements of section 13(a) or 15(d) of the Securities Exchange Act of 1934," and that "[t]he information contained in the [Q2 2019 Report] fairly presents, in all material respects, the financial condition and result of operations of the Company."

34.     The above statements identified in ¶¶ 24 - 33 were materially false and/or misleading and failed to disclose material facts about the Company's business, operations, and financial health. Specifically, Defendants made false and/or misleading statements and failed to disclose to investors that: (i) the Company's addressable market in the U.S. was reaching its maximum capacity; (ii) which significantly decelerated Pinterest's future ability to monetize on U.S. ARPU; (iii) Pinterest was at an increased risk of losing advertising revenue; (iv) and as a result, Defendants' public statements were materially false and misleading at all relevant times or lacked a reasonable basis and omitted material facts.

### The Truth Emerges

35.     On October 31, 2019, Pinterest announced its financial results for the quarter ended September 30, 2019.  In a letter to shareholders, which was attached as exhibit 99.1. to the Form 8-K filed with the SEC on the same day, Pinterest provided highlights of its financial results, including its overall Q3 2019 revenue growth.   Despite the Individual Defendants' rosy projections over the

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

course of several months, the Company reported disappointing financial results, including 8% growth in U.S. MAUs year-over-year, which reached 87 million, only 8 million more than the same period of the previous year.  Critically, the 8% growth represented a 6 point deceleration from the previous quarter and a 2 point deceleration on a 2-year basis. Pinterest thereby solidly missed the Street's revenue target and materially missed the most critical metric of its performance — revenue derived from US advertising.  Pinterest reported its total Q3 2019 revenue at $279.7 million as compared to the consensus projection of $282 million, and its U.S. advertising revenue at $251 million as compared to buy-side expectations of $265 million.  As to full year 2019 guidance, the Company only marginally increased its guidance, implying further deceleration in future quarters.

36.    On this news, the price of the Company's shares steeply declined by 17%, to close at $20.86, on November 1, 2019, on unusually high trading volume.

37.    Pinterest's announcement came as a great surprise to the investing public and the analysts alike who were shocked by the sudden and disappointing news.  During an Earnings Call held on November 1, 2019, Individual Defendants attempted to soften the impact of the disappointing news by highlighting the Company's overall user growth expansion. For example, when pressed by analyst Mark Mahaney of RBC to talk about the "notable deceleration" in U.S. ARPU and its growth trajectory, Defendant Morgenfeld deflected the question, instead pointing to Pinterest's 47% overall growth, and focusing on the Company's future growth:

> And so as we think about growth going forward, it's really going to stem, especially in the US, around two new product areas that have been -- we've been focused on now and talked about for some time, but will scale going forward. They will drive advertiser diversification, and those two areas are shopping and SMB.

38.    When asked by Justin Post of Bank of America to provide more detail regarding the Company's guidance for full year 2019, which suggested more deceleration in Q4, Defendant Morgenfeld likewise dodged the question, stating:

> I go back to the fundamental principle here is that we're investing in a bunch of new things around advertiser diversification that I think will bear fruit over the coming several quarters and years. Those are principally around international coverage and around our

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

mid-market and SMB presence, which I'm delighted with the progress we're making, but it's just going to be a journey.

39.    Following this news, several analysts lowered Pinterest's price target and issued reports pointing to the surprising news delivered by Pinterest on Halloween.  For example, Pivotal Research Group issued a report titled *"We were wrong – not the 'Treat' we were hoping to see,"* in which it observed that the "deceleration in the US advertising was far more than we had hoped for," and added "we got this one DEAD wrong." (caps in original).  Pivotal Research Group subsequently lowered Pinterest's price target by over 25% from $32 to $23.5.  Similarly, a Deutsche Bank report titled "*No candy at this house tonight*" called Pinterest's U.S. user growth "uninspiring" and was critical of the Company's international rollout, stating "[Pinterest] clearly needs more feet on the street to move the needle on revenue and here the company is moving more slowly."  Deutsche Bank subsequently lowered its price target by more than 15% from $39 to $32.

## CLASS ACTION ALLEGATIONS

40.    Plaintiff brings this action pursuant to Rules 23(a) and (b) of the Federal Rules of Civil Procedure, on its own behalf and as representative of a Class, consisting of all those who purchased or otherwise acquired Pinterest's shares during the Class Period ("Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants Silbermann or Morgenfeld have or had a controlling interest.

41.    The Class is so numerous and geographically dispersed that joinder of all members is impracticable.  Throughout the Class Period, Pinterest's shares were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be readily identifiable from information and records in the possession of Defendants or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

42.     Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and members of the Class sustained damages from the same wrongful conduct of Defendants. The injuries and damages of each member of the Class were directly caused by Defendants' wrongful conduct in violation of the laws described herein.

43.     Plaintiff will fairly and adequately protect and represent the interests of members of the Class. Plaintiff is an adequate representative of the Class and has no interest which is adverse to the interests of absent Class members.  Plaintiff has retained counsel competent and experienced in class action litigation, including class actions in the financial services industry.

44.     Common questions of law and fact exist as to all members of the Class, which predominate over questions affecting solely individual members of the Class. These common questions of law include, without limitation:

- whether statements made by Pinterest and the Individual Defendants to investors during the Class Period included misrepresentations of material facts about the growth and revenue prospects, financial condition, operations and oversight of operations at Pinterest;

- whether Pinterest failed to indicate to its investors that the Company's international MAU growth does not account for the Company's majority of revenue and the slow-down in the U.S. growth adversely affects the advertising on the platform;

- whether Pinterest and the Individual Defendants acted knowingly or recklessly in issuing false and misleading statements or omitting material information that would correct the misstatements;

- whether Pinterest's and the Individual Defendants' acts as alleged herein constituted violations of the federal securities laws;

- whether the prices of Pinterest's shares during the Class Period were impacted by the Company's and the Individual Defendants' conduct described herein;

- injury suffered by Plaintiff and Class members; and

- the appropriate measure of damages suffered by Plaintiff and Class members.

45.     A class action is superior to other methods for the fair and efficient adjudication of the controversy because joinder of all Class members is impracticable. Treatment as a class will permit a large number of similarly situated persons to prosecute their common claims in a single

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
13

forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender.

46.     Class treatment will also permit the adjudication of claims by many Class members who could not afford individually to litigate claims such as those asserted in this Complaint. The cost to the court system of adjudication of such individualized litigation would be substantial. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications establishing incompatible standards of conduct for Pinterest and the Individual Defendants.

47.     Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## FRAUD ON THE MARKET DOCTRINE

48.     The market for Pinterest shares was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Pinterest's shares traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired the Company's shares relying upon the integrity of the market price of Pinterest's shares and market information relating to Pinterest and have been damaged thereby.

49.     During the Class Period, the artificial inflation of Pinterest's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Pinterest's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Company's financial and its business, operations, and prospects, thus causing the price of the Company's shares to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of its shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Class purchasing Pinterest's shares at such artificially inflated prices, and each of them has been damaged as a result.

Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine as:

- Pinterest and the Individual Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- these misrepresentations and omissions were material to Plaintiff and the Class;

- Pinterest's shares were traded on the NYSE and were covered by numerous analysts;

- Pinterest shares were liquid and traded with significant volume during the Class Period;

- the misrepresentations and omissions alleged herein would likely induce a reasonable investor to misjudge the value of the Pinterest shares; and

- Plaintiff and Class members purchased and/or sold Pinterest shares between the time Pinterest and the Individual Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

50.     As a result of the foregoing, the market for Pinterest shares promptly digested current information regarding Pinterest from all publicly available sources and reflected such information in Company's share price. Under these circumstances, all purchasers of Company's shares during the Class Period suffered similar injury through their purchase of Pinterest's shares at artificially inflated prices. Thus, a presumption of reliance applies.

51.     Accordingly, Plaintiff and Class members are entitled to a presumption of reliance upon the integrity of the market.

52.     In the alternative, Plaintiff and Class members are entitled to a presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 1456 (1972), because Defendants omitted material information during the Class Period violating a duty to disclose such information as described above.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

**LOSS CAUSATION**

53.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

54.     During the Class Period, Plaintiffs and the Class purchased Pinterest's shares at artificially inflated prices and were damaged thereby. The price of Pinterest shares significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

**NO SAFE HARBOR**

55.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to the allegedly false statements and omissions pled in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and circumstances. To the extent certain of the statements alleged to be false and misleading may be characterized as forward-looking, they were not adequately identified as "forward-looking" statements when made, and were not accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor is intended to apply to any forward-looking statements pled herein, Pinterest and the Individual Defendants are liable for those false and misleading forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false and misleading, and/or the forward-looking statement was authorized and/or approved by an executive officer of Pinterest who knew that those statements were false and misleading when made.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

**SCIENTER ALLEGATIONS**

56.   As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Pinterest and Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding the Company, their control over, and/or receipt and/or modification of Company's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Pinterest, participated in the fraudulent scheme alleged herein.

57.   Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information that they caused to be disseminated to the investing public. The fraudulent scheme described herein could not have been perpetrated during the Class Period without the knowledge and complicity or, at least, the reckless disregard of the personnel at the highest levels of the Company, including the Individual Defendants.

58.   The Individual Defendants, because of their positions with Pinterest, made and/or controlled the contents of the Company's public statements during the Class Period. Each Defendant was provided with or had access to the information alleged herein to be false and/or misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information, Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations that were being made were materially false and misleading. As a result, each of these Defendants are responsible for the accuracy of Pinterest's corporate statements and are therefore responsible and liable for the representations contained therein.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**(Violation of Section 10(b) of the Exchange Act and
Rule 10b-5 Promulgated Thereunder)
Against All Defendants**

59.     Plaintiff hereby incorporates each preceding and succeeding paragraph as though fully set forth herein.

60.     During the Class Period, Pinterest and the Individual Defendants individually and in concert, directly or indirectly, disseminated or approved false statements which they knew or deliberately disregarded in that they contained misrepresentations and failed to disclose material facts to make the statements made not misleading.

61.     Pinterest and the Individual Defendants violated § 10(b) of the 1934 Act and Rule 10b-5 by: (a) making false statements of material facts or omitted to state material facts needed to make the statements not misleading; or (b) engaging in acts and practices that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with purchases of the Company's shares during the Class Period.

62.     Pinterest and the Individual Defendants acted with scienter because they knew that the statements issued in the name of Pinterest were materially false and misleading; knew that these statements would be disseminated to investors; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of these statements as primary violations of securities laws. Pinterest and the Individual Defendants, through receipt of information reflecting true facts about Pinterest, their control over, and/or receipt of or modification to the Company's allegedly materially misleading statements, which made them aware of the Company's confidential proprietary information, participated in the fraudulent scheme complained of herein.

63.     The Individual Defendants had actual knowledge of material omissions and/or the falseness of material statements set forth by Pinterest, and intended to deceive Plaintiff and Class members, or at a minimum, recklessly disregarded the truth through their failure to ascertain and disclose the truth in statements made by them or other Pinterest employees to investors, including Plaintiff and Class members.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

64.     Pursuant to the foregoing, the price of Pinterest shares was artificially inflated during the Class Period. Due to their lack of knowledge of the false nature of statements made by Pinterest and the Individual Defendants, Plaintiff and Class members relied on the statements made by Pinterest and Defendants Silbermann and Morgenfeld and/or the integrity of the market price of Pinterest's shares during the Class Period in purchasing the Company's shares at prices that were artificially inflated due to false and misleading statements and omissions made by Pinterest and the Individual Defendants.

65.     Were Plaintiff and Class members made aware that the market price of Pinterest shares were artificially and falsely inflated by misleading statements made by Pinterest and the Individual Defendants, and by material adverse information that Pinterest and the Individual Defendants failed to disclose, they would not have purchased the Company's shares at artificially inflated prices, or purchased them at any price.

66.     Based on the wrongful conducted alleged herein, Plaintiff and Class members have suffered damages in an amount to be determined at trial.

67.     Pinterest and the Individual Defendants violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to Plaintiff and Class members for significant damages suffered via their purchases of Pinterest's shares during the Class Period.

## SECOND CLAIM FOR RELIEF

### (Violation of Section 20(a) of the Exchange Act)
### Against the Individual Defendant

68.     Plaintiff hereby incorporates each preceding and succeeding paragraph as though fully set forth herein.

69.     During the Class Period, the Individual Defendants were involved in the management and operation of Pinterest's business affairs. Due to their senior positions, they had knowledge of adverse non-public information regarding Pinterest's slowdown of the US MAUs and its effect on the Company's revenue generation, as well as advertising revenue and growth.

70.     As highly positioned officers of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information regarding Pinterest's scope for

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

addressable U.S. market, financial condition and results of operations, and to correct any public statements issued by Pinterest which were materially false or misleading.

71.     Due to their position of authority at Pinterest, the Individual Defendants controlled the contents of various public filings, press releases and reports which Pinterest disseminated in the market during the Class Period.  During the Class Period, the Individual Defendants utilized their authority to cause Pinterest to execute the wrongful acts alleged herein.  The Individual Defendants were therefore each a "controlling person" at Pinterest pursuant to Section 20(a) of the Exchange Act. On this basis, they were participants in the unlawful conduct alleged which caused the prices of Pinterest shares to be artificially inflated.

72.     Based on the conduct described above, the Individual Defendants are liable for the violations committed by Pinterest pursuant to Section 20(a) of the Exchange Act.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully demands relief as follows:

A.     Certifying this lawsuit as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, certifying Plaintiff as Class Representative;

B.     Awarding damages in favor of Plaintiff and members of the Class against Pinterest and the Individual Defendants, jointly and severally, for all damages sustained as a result of Pinterest's wrongdoing, in an amount to be proven at trial;

C.     Awarding Plaintiff and members of the Class their costs of suit, including reasonable attorneys' fees and expenses, and including expert fees, as provided by law;

D.     Awarding Plaintiff and members of the Class pre- and post-judgment interest at the maximum rate allowable by law; and

E.     Directing such further relief as it may deem just and proper.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial as to all issues triable by a jury.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Dated: November 23, 2020

**BLOCK & LEVITON LLP**

By: */s/Whitney E. Street*
Whitney E. Street (CA Bar No. 223870)

100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 968-1852
Fax: (617) 507-6020
whitney@blockleviton.com

**LOWEY DANNENBERG, P.C.**
Andrea Farah (*pro hac vice* forthcoming)
Christian Levis (*pro hac vice* forthcoming)
44 South Broadway, Suite 1100
White Plains, New York 10601
Telephone: 914-997-0500
Fax: (914) 997-0035
Email:  afarah@lowey.com
clevis@lowey.com

*Attorneys for Plaintiff and the Proposed Class*